# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JELD-WEN MASTER WELFARE BENEFIT PLAN,<br><br>                              Plaintiff,<br>   vs.<br><br>TRI-CITY HEALTH CARE DISTRICT, a California Health Care District dba TRI-CITY MEDICAL CENTER,<br><br>                              Defendant. | CASE NO. 12cv197-GPC(RBB)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT**<br><br>[Dkt. Nos. 8, 9.] |

Before the Court is Defendant's motion to dismiss. (Dkt. No. 8.) Plaintiff filed an opposition on April 9, 2012. (Dkt. No. 14.) Defendant filed a reply on April 16, 2012. (Dkt. No. 16.) On May 7, 2012, a hearing was held before District Judge John A. Houston. (Dkt. No. 21.) On October 23, 2012, the case was transferred to the undersigned judge. (Dkt. No. 23.) As described below, the Court converts Defendant's motion to dismiss into a motion for summary judgment. Based on the reasoning below, the Court GRANTS Defendant's motion for summary judgment.

**Procedural Background**

On January 24, 2012, Plaintiff Jeld-Wen Master Welfare Benefit Plan ("Jeld-Wen") filed a complaint for declaratory relief against Defendant Tri-City Health Care District ("Tri-City"). (Dkt. No. 1.) On February 1, 2012, Plaintiff filed an *ex parte* application seeking an order staying arbitration

1  proceedings currently ongoing until the instant action is resolved. (Dkt. No. 3.) On February 7, 2012, the Court denied Plaintiff's *ex parte* application for stay of arbitration proceedings. (Dkt. No. 6.) On February 21, 2012, Defendant filed a motion to dismiss. (Dkt. No. 8.) On April 9, 2012, Plaintiff filed an opposition. (Dkt. No. 14.) Defendant filed a reply on April 16, 2012. (Dkt. No. 16.)

On March 15, 2012, Plaintiff filed a motion for summary judgment, or alternatively, motion for partial summary judgment. (Dkt. No. 9.) On April 6, 2012, Defendant filed an *ex parte* motion to continue Plaintiff's motion for summary judgment. (Dkt. No. 11.) On April 18, 2012, the Court vacated the hearing on Defendant's motion to dismiss and took the motion under submission and granted in part and denied in part Defendant's *ex parte* application to continue Plaintiff's motion for summary judgment. (Dkt. No. 18.) Specifically, the Court vacated the May 7, 2012 hearing date on the motion for summary judgment and stated that the hearing would be rescheduled after issuance of a written ruling of Defendant's motion to dismiss, if deemed necessary. (Id.)

On April 20, 2012, Plaintiff filed a request for oral argument on the motion to dismiss. (Dkt. No. 19.) The Court granted Plaintiff's request for oral argument and held a hearing on May 7, 2012. (Dkt. No. 21.) On October 23, 2012, the case was transferred to the undersigned judge. (Dkt. No. 23.)

**Factual Background**

In December 1997, Plaintiff Jeld-Wen entered into a Participating Hospital Agreement ("Agreement") with Defendant Tri City.[1] (Compl. ¶ 8.) The purpose of the Agreement was to establish rates and terms for financial reimbursement from Jeld-Wen to Tri-City for eligible and appropriate health care services rendered at Tri-City on behalf of eligible and qualified beneficiaries under Jeld-Wen's Health Benefit Plan ("Plan"). (Id.)

On November 18, 2008, a patient ("Patient S"), then a potential eligible Plan participant, completed a Pre-Existing Condition Questionnaire. (Id. ¶ 10.) Patient S indicated he had a "pre-existing heart condition." (Id.) Under the Plan's guidelines, a pre-existing condition is defined as "any medical condition that [Patient S] was diagnosed or treated for in the six months period immediately prior to the first day of coverage Eligibility Date." (Id.) The Plan provides for an

---

[1] Although the Complaint cites to Exhibit A, there are no exhibits attached to the Complaint.

1  exclusion period for any pre-existing condition such that "[c]overage will be excluded for any Pre-
2  existing Conditions for 12 months following the coverage Eligibility Date . . . ." (Id.) Because Patient
3  S had not previously "opted in" for the medical coverage portion of the Health Benefit Plan, his initial
4  medical eligibility date was January 1, 2009. (Id. ¶ 11.) Therefore, under the Plan, Patient S would
5  be excluded from coverage on any treatment rendered for a heart condition from January 1, 2009 to
6  December 31, 2009. (Id.) On or about July 12, 2009, within the exclusion period described above,
7  Patient S went to the Emergency Department at Tri-City, suffering from a heart related condition. (Id.
8  ¶ 12.) Patient S was admitted to Tri-City and underwent a heart-related procedure on or about July
9  16, 2009. (Id.) Patient S was discharged from Tri-City on or about July 21, 2009. (Id.)

10  Tri-City submitted a claim for benefits for reimbursement to Jeld-Wen under the terms of the
11  Agreement for services rendered in the care and treatment of Patient S. (Id. ¶ 13.) Thereafter,
12  consistent with the provisions of the Agreement and the Plan, the Plan Administrator made an
13  evaluation of eligibility and relying on the plain terms of the Plan, the Plan Administrator denied
14  reimbursement to Tri-City because Patient S was suffering a pre-existing condition during the
15  exclusionary period. (Id.) Because Patient S was not eligible for benefits due to his pre-existing
16  condition, there could be no claim for reimbursement of expenses for treatment under any
17  circumstances since the Plan first determines and governs eligibility. (Id. ¶ 14.) If a beneficiary is
18  eligible, then and only then is the Agreement analyzed to determine the amount of reimbursement, if
19  any. (Id.) The Agreement specifies that Jeld-Wen "has the sole authority and responsibility for
20  determination of eligibility under the health benefit plan, determination of coverage within the plan,
21  claims payment, and such other benefit administration functions for which Payer [JELD-WEN] is
22  responsible." (Id.) After the Plan Administrator denied the benefits based upon the Plan's
23  "pre-existing conditions" exclusion, the beneficiary had the right to appeal that determination under
24  terms and conditions set forth in the Plan. (Id. ¶ 15.) Neither Patient S nor Tri-City (as assignee of
25  Patient S) filed an appeal and the Plan Administrator's determination became final. (Id.)

26  In its motion to dismiss, Tri-City presents additional facts relevant to the instant motion. On
27  July 13, 2009, Tri-City contacted Shasta Administrative Services ("Shasta"), Jen-Weld's third party
28  administrator and agent, to verify a patient's health care coverage. Ruth, the customer service

representative at Shasta, indicated that the patient did not require precertification as he presented through the emergency room and that the patient's plan would pay 80% of billed charges and that the patient had a $500 co-pay. (Dkt. No. 8, Mot. at 6-7.)

On July 15, 2009, Tri-City contacted Innovative Care, Jen-Weld's utilization review company and agent, to obtain further authorization for the hospitalization of the patient. Later that same day, Tri-City received a telephone call from Patti at Innovative Care authorizing the patient's stay until July 20, 2009. (Id. at 7.) On September 18, 2008, Tri-City contacted Shasta and was informed for the first time that the claim was pending for a pre-existing condition. (Id.) Based on the authorization of treatment and verification of coverage provided to Tri-City by Jeld-Wen and its agents, Tri-City filed a Demand for Arbitration seeking reimbursement in accordance with the rates found in the Agreement. (Id.)

Around December 29, 2010, Defendant served a Demand for Arbitration ("Demand") with the American Arbitration Association ("AAA"). (Dkt. No. 8-2, Huezo Decl., Ex. A.) The Arbitration Demand stated the nature of the dispute as:

> The claim for patient S.S. identified on the attached Exhibit 1 had been improperly denied and inappropriately unpaid pursuant to the Interplan agreement at 20% discount off billed charges due to pre-existing condition. However, services were authorized and patient's benefits were verified and no pre-existing condition exclusions were communicated. Interest has yet to be paid on this claim pursuant to Health and Safety Section 1371.35. The payor, Jen-Weld, Inc. owes Claimant, Tri-City Medical Center the total sum of $159,287.20.

Id.

After engaging in a preliminary hearing, Plaintiff filed a motion for summary judgment on September 12, 2011 arguing that the patient was suffering from a pre-existing condition within the exclusionary period and that Tri-City's claims were preempted by ERISA. (Dkt. No 14-1, Freestone Decl., Ex. A.) On October 5, 2011, after hearing oral argument, the Arbitrator denied Jeld-Wen's motion for summary judgment. (Id., Ex. B.) The Arbitrator also ordered that Tri-City provide Jeld-Wen with a Detailed Specification of Claims. (Id.) Around October 21, 2011, Tri-City provided a Detailed Specification of Claims to Jeld-Wen. (Compl. ¶ 18.) After receipt of the Detailed Specification of Claims, in a letter dated December 2, 2011, Jeld-Wen notified the Arbitrator that the "new" claims did not arise out of the Agreement but were claims not subject to the very narrow

arbitration clause. (Dkt. No. 14-2, Freestone Decl., Ex. C.) It informed the Arbitrator that the claims were not arbitrable and only a court of law could determine which claims are subject to arbitration. (Id.) Tri-City objected to Jeld-Wen's position arguing that the Arbitrator has authority to determine the arbitrability of the dispute and the entire dispute falls within the arbitration clause and is not preempted by ERISA. (Id.)

On December 28, 2011, the Arbitrator issued an Order on Respondent's Objections to Arbitrability of Claims and Request for a Stay. (Dkt. No. 8-4.) In the order, the Arbitrator concluded that it has power under AAA Rule R-7(a) to rule on its jurisdiction, including any objections to the scope of the arbitration agreement and denied Jeld-Wen's request for a stay. (Id.) The Arbitrator also concluded that the claims asserted in the Demand and Specification relate to and arise out of the alleged conduct of Shasta in the performance of the "authorization" and "verification" processes under the Agreement. (Id.) The Arbitrator also concluded that the claims asserted are not preempted by ERISA citing Marin Gen. Hosp. v. Modesto & Empire Traction Co., 581 F.3d 941 (9th Cir. 2009). (Id.)

In the complaint, Plaintiff seeks declaratory relief that a court of law, not an arbitrator, determines the arbitrability of claims; that Defendant's assertion of new claims are not subject to arbitration; and that the claims in the Demand and Detailed Specification are preempted by ERISA, 29 U.S.C. § 1001 *et seq*. (Compl. ¶¶ 22, 25, 29.)

**Discussion**

**A.   Legal Standard**

Defendant moves to dismiss under Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. See Balistreri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990). A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009).

"If matters outside the pleadings are submitted, the motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is treated as one for summary judgment." Jacobson v. AEG Capital Corp., 50 F.3d 1493, 1496 (9th Cir. 1995); see also Del Monte Dunes v. City of Monterey, 920 F.2d 1496, 1507-08 (9th Cir. 1990) (where district court considered affidavits and exhibits in support of and opposition to motion to dismiss, court of appeals treated dismissal as order granting summary judgment under Fed. R. Civ. P. 56(c)).

In the motion to dismiss and opposition to motion to dismiss, both parties filed documents and declarations that the Court has reviewed in making its ruling. Accordingly, the Court treats Defendant's motion to dismiss as a motion for summary judgment under Federal Rule of Civil Procedure 56.

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material when it affects the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

**B.   Standing**

Defendant argues that Plaintiff Jeld-Wen Master Welfare Benefit Plan has no standing to bring this Complaint. Defendant contends that in the underlying arbitration, Tri-City named Jeld-Wen, Inc. as the Respondent and not Jeld-Wen Master Welfare Benefit Plan, who is the Plaintiff in this case. In opposition, Plaintiff argues that Tri-City is aware that the only Jeld-Wen entity participating in the arbitration was Jeld-Wen Master Welfare Benefit Plan and not Jeld-Wen, Inc. During an initial status

1  conference held on June 6, 2011 before the Arbitrator, Jeld-Wen brought up the fact that Tri-City
2  should have named Jeld-Wen Master Welfare Benefit Plan, not Jeld-Wen, Inc.  (Dkt. No. 14-1,
3  Freestone Decl. ¶ 2.)  At the time, Tri-City's counsel was amendable to changing the named party.
4  (Id.)  Subsequently, Jeld-Wen states that "all references and orders by the arbitrator referenced Jeld-
5  Wen Master Welfare Benefit Plan as the respondent. . . ."  (Id.)

6  A review of the records in arbitration shows that the named Respondent changed from Jeld-
7  Wen, Inc. to Jeld-Wen Health Benefit Plan, not Jeld-Wen Master Welfare Benefit Plan.  (Dkt. No. 14-
8  1, Freestone Decl., Exs. A, B, C & D.)  Contrary to Freestone's declaration, documents submitted by
9  Jeld-Wen during the arbitration references itself as Jeld-Wen Health Benefit Plan.  The Abitrator also
10 referenced Jeld-Wen Health Benefit Plan and not Jeld-Wen Master Welfare Benefit Plan.  Plaintiff
11 does not provide an explanation that establishes a legal relationship between Jeld-Wen Master Welfare
12 Benefit Plan and Jeld-Wen Health Benefit Plan.  Based on the record before the Court, Jeld-Wen
13 Master Welfare Benefit Plan and Jeld-Wen Health Benefit Plan are two separate entities.  Since the
14 Respondent in the arbitration is Jeld Wen Health Benefit Plan, Jeld-Wen Master Welfare Benefit Plan
15 is not a real party-in-interest in this case challenging the underlying arbitration.  Accordingly, the Court
16 concludes that Plaintiff is not a real party in interest and GRANTS Defendant's motion.  However,
17 even if the Court determined that Jeld-Wen Master Welfare Benefit Plan was the proper party in this
18 case, the Court further GRANTS Defendant's motion based on the reasons stated below.

19 **C.    Waiver**

20 Tri-City argues that Jeld-Wen waived its ability to challenge the arbitrability of the dispute by
21 participating in the arbitration.  Jeld-Wen contends that it has not waived its right to challenge the
22 arbitration since it objected to the Detailed Specification of Claims.

23 "A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the
24 decision is unfavorable, then challenge the authority of the arbitrators to act."  Ficek v. Southern Pac.
25 Co., 338 F.2d 655, 657 (9th Cir. 1964).  In Nagrampa, the Court found that the plaintiff did not waive
26 her right to challenge the arbitrability of the dispute because her "'participation' was minimal, limited
27 to procedural issues and undertaking certain actions to preserve her rights."  Nagrampa v. MailCoups.,
28 Inc., 469 F.3d 1257, 1278 (9th Cir. 2006).  Plaintiff's involvement consisted of a letter seeking a 90

day continuance, a letter objecting to the validity of the arbitration provision, and a conference call that resulted in a scheduling order. Id.  She also made an unsuccessful attempt to file a counter-demand and propounded one set of discovery requests which were done to avoid losing her right to do so later. Id.  The Court noted that Plaintiff never participated in any proceedings which touched on the merits of the claims that were to be subject to arbitration. Id. at 1278.

In this case, Jeld-Wen admits that it did not initially object to the arbitrator's jurisdiction and agreed to arbitration as it believed that the claim arose under the Agreement or was related to "performance" of the Agreement. (Dkt. No. 14 at 10.) The Demand for Arbitration was served around December 29, 2010. (Dkt. No. 8-2, Huezo Decl., Ex. A.) On September 12, 2011, Jeld-Wen filed a motion for summary judgment. (Dkt. No. 14-2.) An opposition was filed by Tri-City. (Dkt. No. 14-2.) A reply was filed by Jeld-Wen. (Id.) A hearing on the motion for summary judgment was held on October 4, 2011. (Id.) On October 5, 2011, the Arbitrator denied Jeld-Wen's motion for summary judgment. (Id.) As part of the Arbitrator's order, she directed Tri-City to file a "complete and detailed specification of Tri-City's claims, including, without limitation, the identification of any and all statutory bases for such claims." (Id.)

Tri-City filed a Detailed Specification of Claims, dated October 21, 2011, which asserted claims for breach of written contract, breach of oral contract, breach of implied-in-fact contracts, negligence, negligent misrepresentation, estoppel, violation of California Health & Safety Code sections 1371.4 and 1371.8 and 1389.3, and quantum meruit. (Dkt. No. 14-2.) By letter dated December 2, 2011, Jeld-Wen objected to arbitration of these "additional claims" and requested a stay of the proceedings. (Id.)

Based on the proceedings in arbitration, Jeld-Wen's involvement was not minimal and not limited to procedural issues. In fact, the parties participated in a motion for summary judgment which the Arbitrator later denied. Jeld-Wen's motion touched on the merits of the claims that were subject to arbitration. See Nagrampa, 469 F.3d at 1278.

In addition, Plaintiff's allegation that the Detailed Specification amounts to an "amended" Demand is not proper. The Detailed Specification merely laid out the legal causes of action based on

the facts alleged in the original Arbitration Demand.[2] Accordingly, the Court concludes that Plaintiff has waived its ability to challenge the arbitration.[3]

### D.     First Cause of Action - Arbitrability

Defendant argues that the Arbitrator has the authority to rule on its own jurisdiction. In opposition, Plaintiff argues that since it objected to the Arbitrator making that determination, it did not "clearly and unmistakably" provide that the Arbitrator could make that decision.

Generally, arbitrability is typically for the Court to decide, not arbitrators "[u]nless the parties clearly and unmistakably provide otherwise." AT & T Techs v. Comms. Workers, 475 U.S. 643, 649 (1986); see also Poweragent, Inc. v. Electronic Data Sys. Corp., 358 F.3d 1187, 1191 (9th Cir. 2004). The proper inquiry is whether "there is clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator[s]." Contec Corp. v. Remote Solution, Co., 398 F.3d 205, 208 (2d Cir. 2005) (quotation omitted). In evaluating whether the parties so intended to provide, courts apply ordinary state-law contract principles. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).

District Courts have held that where the "parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules - such as the Commercial AAA Rules - that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator." Bank of America v. Micheletti Family P'ship, No. 08-02902 JSW, 2008 WL 4571245, *6 (N.D. Cal. 2008); see also Visa v. Maritz, Inc., No. C 07-05585 JSW, 2008 WL 744832, at *5 (N.D. Cal. March 18, 2008); Popnin v. Virtual Pro, Inc., No. C 06-4019 PJH, 2006 WL 2691418, *9 (N.D. Cal. 2006); Terminix Int'l Co. v. Palmer Ranch Ltd., 432 F.3d 1327, 1332 (11th Cir. 2005).

---

[2]The Arbitrator also determined that the Detailed Specification asserted additional theories of recovery based on the alleged facts, and were not based on new allegations or newly asserted facts. (Dkt. No. 14-2, Freestone Decl., Ex. C.)

[3]In its opposition, Plaintiff also argues that the arbitration clause is a non-mandatory arbitration provision so Plaintiff should not be compelled to arbitration based on the "new" claims asserted. Although non-mandatory, Plaintiff agreed to proceed with arbitration, participated procedurally and substantively, and may not use the non-mandatory language in the arbitration to now challenge its involvement in the arbitration.

In this case, the arbitration clause provides:

> Should any dispute arise between the parties over any provision of this Agreement or over any performance of this Agreement, said parties shall consider arbitration in accordance with the American Arbitration Association.

(Dkt. No. 80-2 at 6.) The parties agreed to abide by the rules under the American Arbitration Association ("AAA"). According to AAA Rule R-7(a), "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA Rule R-7(a). Therefore, based on the parties agreeing to the rules under the AAA, the parties intended that the issue of arbitrability be decided by the arbitrator. In the underlying arbitration, the Arbitrator concluded that it has the authority to rule on its jurisdiction, including any objections to the scope of the arbitration agreement. (Dkt. No. 14-2, Freestone Decl., Ex. C.) Plaintiff has failed to show there is a genuine issue of material fact as to arbitrability. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the first cause of action.

**E.   Second Cause of Action - Assertion of New Claims**

Since the Court has determined that the Arbitrator has the power to rule on her own jurisdiction, it follows that the Arbitrator also has the power to determine whether it retains jurisdiction of the alleged assertion of new claims. In the underlying arbitration, the Arbitrator concluded that the claims set forth in the Detailed Specification also arose out of the authorization and verification process under the Agreement. (Dkt. No. 14-2, Freestone Decl., Ex. C.) Plaintiff has failed to show that there is genuine issue of material fact as to this cause of action. Accordingly, the Court GRANTS Defendant's motion for summary judgment as to the second cause of action.

**F.   Third Cause of Action - Preemption by ERISA**

Defendant argues that its claims are not pre-empted by ERISA while Plaintiff contends that Defendant's claims are preempted by ERISA. The Complaint seeks a judicial determination that Tri-City's claims, even if they are subject to arbitration, are preempted by ERISA. (Compl. ¶ 29.)

"Statutory ERISA claims are subject to arbitration under the FAA [Federal Arbitration Act] when the parties have executed a valid arbitration agreement encompassing the claims at issue." Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1112 n. 1 (3d Cir. 1993). Courts

have uniformly held that ERISA claims are arbitrable. Secure Health Plans of Georgia, LLC v. DCA of Hawkinsville, LLC, 10cv417(MTT), 2010 WL 4823435 *3 (M.D. Ga. Nov. 22, 2010) (citing Shearson/American Express, Inc. v. McMahon, 482 U.S. 220 (1987) and Rodriguez de Quijas v. Shearson/American Express, Inc., 490 U.S. 477 (1989)); see also Comer v. Micor, Inc., 436 F.3d 1098, 1100 (9th Cir. 2006) (explaining that the Ninth Circuit had "expressed skepticism about the arbitrability of ERISA claims, . . . but those doubts seem to have been put to rest by the Supreme Court's opinions" in McMahon and Quijas ).

Since ERISA claims are arbitrable and the Court determined that the arbitrability of claims in this case are to be determined by the arbitrator, the Court GRANTS Defendant's motion for summary judgment as to the third cause of action.[4]

**Conclusion**

Based on the above, the Court GRANTS Defendant's motion for summary judgment as to all causes of action in the Complaint. The Court also DENIES Plaintiff's motion for summary judgment as MOOT.

IT IS SO ORDERED.

DATED: November 27, 2012

_____
HON. GONZALO P. CURIEL
United States District Judge

---

[4] The Arbitrator concluded that the claims were not preempted by ERISA. (Dkt. No. 14-2, Freestone Decl., Ex. C.)